UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 8:24 cr 51 wfj- AAS

DEVIN ALAN RHODEN                           18 U.S.C. § 371
    a/k/a "Denny,"
    a/k/a "Deviinz," and
BERMAN JERRY NOWLIN, JR.
    a/k/a "Repulse"
    a/k/a "Zayous"

<u>**INDICTMENT**</u>



The Grand Jury charges:

<u>**COUNT ONE**</u>
**(Conspiracy to Commit Wire Fraud and Money Laundering)**

### A.    <u>Introduction</u>

At times material to this Indictment:

1.    Defendant DEVIN ALAN RHODEN, a/k/a "Denny" and "Deviinz,"

was a resident of the State of Florida. RHODEN maintained an account at

Cryptocurrency Exchange #1 and an account ending in 7732 at a financial

institution ("FI-7732").

2.    Defendant BERMAN JERRY NOWLIN, JR., a/k/a "Repulse" and

"Zayous," was a resident of the State of Alabama. NOWLIN maintained an account

at Cryptocurrency Exchange #1 and an account ending in 5288 at a financial

institution ("FI-5288").

3.     Based on materially false and fraudulent pretenses and representations and material omissions, RHODEN and NOWLIN convinced hundreds of victims to invest tens of thousands in cryptocurrency in a non-fungible token collection named "Undead Tombstone." RHODEN and NOWLIN failed to follow through and, instead, stole and ultimately laundered the funds of the victim-investors.

## B.     Definitions

4.     Cryptocurrency" was a digital currency circulated over the Internet as a form of value. Cryptocurrencies were created, and their transactions were verified and records maintained, by a decentralized system using cryptography, rather than through a centralized authority like a bank or government. There were multiple types of cryptocurrency, including Bitcoin ("BTC"), Solana ("SOL"), and Ethereum ("ETH").

5.     A "blockchain" was a distributed ledger with growing lists of records (blocks) that were securely linked together via cryptographic hashes. Each block contained a cryptographic hash of the previous block, a timestamp, and transaction data. Since each block contained information about the previous block, they effectively formed a chain, with each additional block linking to the ones before it. Consequently, blockchain transactions were irreversible in that, once they were recorded, the data in any given block could not be altered retroactively without altering all subsequent blocks.

2

6.      A "non-fungible token," or NFT, was a digital asset recorded on a blockchain. "Minting" referred to the creation of an NFT on a blockchain. Once minted, NFTs could also be transferred on the blockchain, but could no longer be edited, modified, or deleted. Each NFT was a one-of-a-kind and could not be copied, substituted or subdivided. NFTs could be created in multiple forms, but one of the most popular types of NFTs was an image data file, similar to a .jpeg image file. Unlike a .jpeg, however, the NFT provided the owner with the electronic image and corresponding certificate of ownership.

7.      "Staking" was the process of linking a digital asset to a blockchain for a certain period of time. Staking helped maintain the security of a blockchain by committing the asset to a blockchain validator. In return for staking, the digital asset owner could earn additional cryptocurrency.

8.      A "liquidity pool," or LP," was a centralized pool of NFTs that users contributed to, aiming to create liquidity for NFT transactions. In an LP, users could contribute their NFTs to the pool in exchange for a certain amount of cryptocurrency. Unlike traditional markets, NFT liquidity pools provided a decentralized and automated way for buyers and sellers to exchange tokens without the need for intermediaries, achieving liquidity in the NFT market.

9.      A "rug pull" was a scam where a digital asset developer promoted and marketed a project to attract victim-investor money, but later abruptly abandoned the project with the money. The name is derived from the idiom "to pull the rug out"

3

from under someone, suddenly taking away important support.

## C.    **The Conspiracy**

10.    Beginning on an unknown date, but no later than in or around March 2022, and continuing through at least in or around May 2022, in the Middle District of Florida and elsewhere, the defendants,

> DEVIN ALAN RHODEN,
> a/k/a "Denny" and "Deviinz," and
> BERMAN JERRY NOWLIN, JR.
> a/k/a "Repulse" and "Zayous,"

did knowingly and willfully conspire and agree with others, both known and unknown to the Grand Jury, to commit offenses against the United States, that is, wire fraud, in violation of 18 U.S.C. § 1343, and money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

## D.    **Manner and Means**

11.    The manner and means by which the conspirators sought to accomplish the objects of the conspiracy included, among others, the following:

a.    It was a part of the conspiracy that the conspirators would and did create social media accounts to advertise and promote an NFT collection named "Undead Tombstone;"

b.    It was further part of the conspiracy that the conspirators would and did use social media accounts to make material misrepresentations regarding the Undead Tombstone NFT collection for the purpose of attracting victim-investors,

4

including, but not limited to, the amount of victim-investor proceeds that would be dedicated to the NFT's liquidity pool, staking opportunities, the provision of lump sums of cryptocurrency, and a collaboration with a well-known and successful NFT project;

c.       It was further part of the conspiracy that the conspirators would and did cause victim-investors to wire and send cryptocurrency to accounts controlled by the conspirators;

d.       It was further part of the conspiracy that the conspirators would and did abandon the Undead Tombstone collection without satisfying several of the representations made to victim-investors;

e.       It was further part of the conspiracy that the conspirators would and did transfer the fraudulently-obtained proceeds in order to conceal and disguise the source of, and to hinder any efforts to locate, those proceeds;

f.       It was further part of the conspiracy that the conspirators would and did share in the fraudulently-obtained proceeds;

g.       It was further part of the conspiracy that the conspirators would and did delete the social media accounts used to advertise and promote the Undead Tombstone NFT collection; and

h.       It was further part of the conspiracy that the conspirators would and did perform acts and make statements to misrepresent, hide and conceal, and cause to be misrepresented, hidden and concealed, the purpose of the conspiracy and

the acts committed in furtherance thereof.

### E. Overt Acts

12.    In furtherance of the conspiracy and to effect its objects, the conspirators committed the following overt acts, among others, in the Middle District of Florida and elsewhere:

a.    On or about April 19, 2022, RHODEN and NOWLIN announced that Undead Tombstone would be collaborating with a well-known and successful NFT project.

b.    On or about April 19, 2022, and after collecting SOL from victim-investors, RHODEN and NOWLIN abandoned the Undead Tombstone mint prior to completion.

c.    On or about April 19, 2022, RHODEN and NOWLIN converted the SOL into ETH ("the fraud proceeds") using a program that facilitates the transfer of cryptocurrency from one blockchain to another, also known as "chain-hopping."

d.    On or about April 19, 2022, the fraud proceeds were split into nearly equal halves and sent to RHODEN and NOWLIN's respective accounts at Cryptocurrency Exchange #1.

e.    On or about April 19, 2022, RHODEN used his share of the fraud proceeds to purchase U.S. currency. On or about April 20 and 25, 2022, RHODEN moved the fraud proceeds from his account at Cryptocurrency Exchange #1 to FI-7732.

6

f.      On or about April 19, 2022, NOWLIN used his share of the fraud proceeds to purchase U.S. currency. On or about April 20 and 26, 2022, NOWLIN moved the fraud proceeds from his account at Cryptocurrency Exchange #1 to FI-5288.

All in violation of 18 U.S.C. § 371.

## FORFEITURE

1.      The allegations contained in Count One of this Indictment are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(2)(B), and 28 U.S.C. § 2461(c).

2.      Upon conviction of a conspiracy to violate 18 U.S.C. § 1343, in violation of 18 U.S.C. § 371, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

3.      Upon conviction of a conspiracy to violate 18 U.S.C. § 1956, in violation of 18 U.S.C. § 371, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property.

4.      The property to be forfeited includes, but is not limited to, an order of forfeiture in the amount of proceeds obtained from the offenses.

5.      If any of the property described above, as a result of any act or omission of the defendant:

7

g.  cannot be located upon the exercise of due diligence;

h.  has been transferred or sold to, or deposited with, a third party;

i.  has been placed beyond the jurisdiction of the court;

j.  has been substantially diminished in value; or

k.  has been commingled with other property which cannot be divided

without difficulty,

the United States of America shall be entitled to forfeiture of substitute property

under the provisions of 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1)

and 28 U.S.C. § 2461(c).

A TRUE BILL,

Foreperson

ROGER B. HANDBERG
United States Attorney

By: _____
Carlton C. Gammons
Assistant United States Attorney

By: _____
Rachelle DesVaux Bedke
Assistant United States Attorney
Chief, Economic Crimes Section

9

## UNITED STATES DISTRICT COURT
Middle District of Florida
Tampa Division

THE UNITED STATES OF AMERICA

vs.

DEVIN ALAN RHODEN
a/k/a "Denny,"
a/k/a "Deviinz,"
and
BERMAN JERRY NOWLIN, JR.
a/k/a "Repulse"
a/k/a "Zayous"

### INDICTMENT

Violations: 18 U.S.C. §§ 371, 1343

A true bill.

_____
Foreperson

Filed in open court this 6th day

of February 2024.

_____
Clerk

Bail $_____

GPO 863 525